UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
SOUTH BEND DIVISION

| | |
|---|---|
| BILLY BAYER, by his parent and next friend MARIE BAYER, and MARIE BAYER, <br><br> Plaintiffs <br><br> v. <br><br> DUNELAND SCHOOL CORP., and PORTER COUNTY EDUCATION INTERLOCAL, <br><br> Defendants | CAUSE NO. 3:04-CV-00074 RM |

OPINION AND ORDER

Marie Bayer, *pro se*, brings this action on behalf of herself and her son, Billy, appealing the outcome of two administrative proceedings which concluded that the defendants, Duneland School Corporation and Porter County Education Interlocal, had not violated the Individuals with Disabilities in Education Act (IDEA), 20 U.S.C. § 1400 *et seq.* The Bayers' second amended complaint also endeavors to state claims for alleged violations of the Due Process Clause of the Fourteenth Amendment, the Americans with Disabilities Act (ADA), Section 504 of the Rehabilitation Act, and the Federal Educational Records Privacy Act. The defendants jointly moved for summary judgment on the IDEA claim, and the court now considers their motion.

The IDEA contains no statute of limitations, so courts look to the state statute of limitations most analogous to the IDEA. Dell v. Bd. of Educ., Township High Sch. Dist. 113, 32 F.3d 1053, 1058 (7th Cir. 1994) (citation omitted). At least

four federal courts of appeals have applied the statute of limitations for personal injury actions to IDEA claims. S.V. v. Sherwood Sch. Dist., 254 F.3d 877, 879 (9th Cir. 2001) (applying Oregon's personal injury statute of limitations and noting similar practice by the First, Fourth, and Eighth circuits). Both administrative proceedings applied Indiana's two-year personal injury statute of limitations to the Bayers' claims. IND. CODE § 34-11-2-4. The Bayers have not objected to this, and the court sees no reason to apply a different limitations period, so the Bayers' claims cover events that occurred on or after February 8, 2001 (two years before they filed their administrative action).

BACKGROUND

With this limitations period in mind, the court summarizes the underlying facts of this case, paying particular attention to those that occurred since February 8, 2001. Billy was born March 24, 1991 and is a resident within the defendant's service area. He displayed signs of impaired speech development at an early age, and was evaluated at the age of two. These tests showed normal cognitive, social-emotional, motor and self-help development, and noted a moderate delay in language skills. He attended pre-school for about half a year, then entered kindergarten in the Duneland School Corp. in February 1997, just before his sixth birthday. His attendance was poor, as it would be throughout his time in the Duneland schools. From 1997 to 2003, when he withdrew to be home

schooled, Billy missed 217 days of school—the equivalent of 1.2 school years (based on 180 days per year).

The next year, Billy repeated kindergarten at the Duneland schools. In September 1997, a clinical psychologist diagnosed Billy as having attention deficit hyperactivity disorder, hyperactive impulsive type, and oppositional defiant disorder. Billy demonstrated severe behavior problems in the fall semester of 1997 resulting in a suspension and an 8-day hospitalization. Upon his return to school, the school implemented a behavior plan. Mrs. Bayer consented to having an initial education evaluation performed for Billy. During this evaluation period (still during kindergarten) Billy was suspended again for kicking another student, throwing things on the floor, turning over tables and chairs, and spitting in the school nurse's face. The evaluation found a range of behavioral/emotional disorders, but found Billy possessed average cognitive ability. IQ tests were administered to Billy in third and fifth grade, and both times he again scored in the average range.

On January 29, 1998 the school and Mrs. Bayer convened a case conference committee to discuss Billy's evaluation and to develop an IEP to meet his needs. The IEP provided direct special education instruction in language arts, math and affective education in a self-contained classroom for children with emotional disabilities. Mrs. Bayer agreed to this IEP. For the next several years, the school and Mrs. Bayer convened at least annually for Case Conference Committees to reassess Billy's needs and to revise his IEP accordingly. At times these meetings

3

were used to adjust the amount of time Billy spent in a regular classroom ("mainstreaming") as opposed to the self-contained emotionally disabled class. Changes were made based on Billy's academic and behavioral progress. At one point, the IEP called for implementing a behavioral management plan to help Billy behave acceptably. The behavioral plan carried over from one IEP to the next, and was modified based on Billy's behavioral performance.

In February 2001, the school and Mrs. Bayer held a case conference committee in which they reviewed Billy's eligibility for extended school year (ESY) services. ESY services were made available to students classified as learning disabled and to students who did not regain their levels of performance from the previous school year by October 15 of the following year. The school determined Billy was ineligible for ESY services because each year (up through 2000-2001) he had regained his past performance levels by October 15, and—based on cognitive tests—he was not learning disabled. Mrs. Bayer approved the IEP drafted in February 2001.

Billy was fourth grader in the fall of 2001, and his behavior deteriorated. He became more defiant and disruptive. He was mainstreamed during the first part of the year, but was returned to special education classes by February 2002 to address his behavior patterns. At a February 2002 case conference committee the school again considered and rejected Billy for ESY services. Billy hadn't regained his past performance levels by October 15, 2001, but the school officials believed ESY wouldn't help him. They attributed Billy's poor academic retention and

4

progress to his excessive absences from school, his poor attitude toward learning, and his behavioral problems. In February 2002, Mrs. Bayer informed the school that Billy was no longer taking medication for his attention deficit hyperactivity disorder. Mrs. Bayer agreed to the IEP produced by the February 2002 case conference committee.

In fifth grade, Billy continued to have behavioral problems, and he attended a self-contained emotional disabilities class for most instruction. The school held another case conference committee in October 2002—the regularly scheduled annual case conference committee wasn't planned until February 2003—at Mrs. Bayer's request. The case conference committee placed Billy in the emotional disabilities class for all instruction, implemented a behavior intervention plan, and recommended that Mrs. Bayer meet with his teacher weekly to discuss Billy's progress. Mrs. Bayer soon asked the school to hold another case conference committee, but the school refused to do so until about three months later, in January 2003.

On January 29, 2003, the case conference committee met and noted Billy was progressing academically, albeit slowly. The committee cited Billy's poor attendance record and behavior as the reasons for his slow progress. Mrs. Bayer did not approve the IEP that was produced by the January 2003 case conference committee. In all of Billy's time in the Duneland schools, this was the only IEP she didn't approve. She objected to Billy not receiving extended school year services. She also requested that Billy be reevaluated for a learning disability. The school

5

was going to honor that request, but Mrs. Bayer withdrew her permission for the evaluation when she filed for an administrative due process hearing on February 8, 2003. In January and February 2003 Billy was absent from school a total of 15 days. He last attended school on March 5 and he formally withdrew to be home schooled on April 1, 2003.

The independent hearing officer assigned to the administrative hearing ordered that Billy be reevaluated. Billy was again assessed as emotionally disabled. He wasn't learning disabled, the school concluded, because his test results showed average intellect with no processing deficits. The school also decided Billy didn't need speech, language, occupational, or physical therapies, and that his achievement problems were caused by severe truancy and his lack of motivation and interest in school. After five days of hearings the hearing officer rendered a decision in favor of the defendants. The Indiana Board of Special Education Appeals later affirmed that conclusion. The Bayers then filed the present civil action in this court.

## IDEA REQUIREMENTS

States that receive federal money for special education services under the IDEA are required to comply with guidelines set forth in 20 U.S.C. § 1400 *et seq*. Students wishing to challenge a school's compliance with the IDEA may bring a civil suit in federal or state court after exhausting certain administrative remedies outlined in the Act. 20 U.S.C. § 1415(i)(2). The Bayers challenged the defendants

6

compliance with the IDEA in front of an independent hearing officer and then in front of the Indiana Board of Special Education Appeals. The defendants don't contest that they have received federal education money that compels their compliance with the IDEA, nor that the Bayers exhausted their administrative remedies as to their IDEA claim. That claim is now properly before this court. Both the hearing officer and the Board of Special Education Appeals made detailed factual and legal findings and concluded that the Bayers were not entitled to relief under the IDEA.

A summary judgment motion on an IDEA claim is a bit of a misnomer. The court doesn't engage in its typical analysis under FED. R. CIV. P. 56 to determine whether there are genuine issues of material fact for trial. Rather, a summary judgment motion on an IDEA claim is a vehicle for asking the district court to review the outcome of the administrative proceedings and determine, by a preponderance of the evidence, whether that administrative decision was correct. *See* Alex R. by Beth R. v. Forrestville Valley Cmty. Unit Sch. Dist # 221, 375 F.3d 603, 611 (7th Cir. 2004). "The party challenging the outcome of the administrative proceedings, [here the Bayers], bears the burden of proof." Id. (citing Heather S. by Kathy S. v. Wisconsin, 125 F.3d 1045, 1052 (7th Cir. 1997)). "In deciding whether the challenging party meets that burden, the district court '(i) shall receive the records of the administrative proceedings; (ii) shall hear additional evidence at the request of a party; and (iii) basing its decision on the

preponderance of the evidence, shall grant such relief as the court determines is appropriate.'" Id. (quoting 20 U.S.C. § 1415(i)(2)(B)).

The administrative decision-makers' findings of fact are entitled to "due weight". Alex R. v. Forrestville Valley, 375 F.3d at 612 (citing Hendrick Hudson Dist. Bd. of Educ. v. Rowley, 458 U.S. 176, 206 (1982)). What constitutes "due weight" varies from case to case depending especially upon how much new evidence the court considers and relies on under 20 U.S.C. 1415(i)(2)(B)(ii). The more the court depends on evidence that wasn't presented at the administrative proceedings, the less deference is due to the administrative findings of fact. Alex R. v. Forrestville Valley, 375 F.3d at 612. The Bayers have submitted voluminous amounts of new evidence collected in four large three-ring binders—around 2,000 pages. However, the Bayers have not directed the court's attention to any new evidence that affects the outcome of their claim, so the court relies on none of it. Accordingly, the court "owes considerable deference" to the administrative findings of fact, "and may set aside the administrative order only if it is "strongly convinced that the order is erroneous.'" Alex R. v. Forrestville Valley, 375 F.3d at 612 (quoting Sch. Dist. v. Z.S., 295 F.3d 671, 675 (7th Cir. 2002)).

The IDEA requires schools to provide students with a free, appropriate, and public education. 20 U.S.C. § 1412(a)(1). The parties don't dispute that Billy received an education that was both "free" and "public"; the lone issue for resolution is whether his education was "appropriate". To be "appropriate" under the IDEA, a school's educational services to a child must (1) "meet the standards

of the State educational agency;" (2) "include an appropriate preschool, elementary, or secondary school education in the State involved;" and (3) must be "provided in conformity with the individualized education program required under section 1414(d) of [Title 20]." 20 U.S.C. § 1401(8).

The individualized education program detailed in § 1414(d) commonly is referred to as an IEP. An IEP is valid when it was (1) "adopted according to the IDEA's procedures and (2) it is 'reasonably calculated to enable the child to receive education benefits.'" Alex R. v. Forrestville Valley, 375 F.3d at 613 (quoting Hendrick Hudson Dist. Bd. of Educ. v. Rowley, 458 U.S. at 206-207. Courts have not applied the first element with excessive rigor. "[A procedural violation of the IDEA is not a *per se* denial of a [free, appropriate, public education]; rather, a school district's failure to comply with the procedural requirements of the Act will constitute a denial of a [free, appropriate, public education] only if such violation causes substantive harm to the child or his parents." Knable ex rel. Knable v. Bexley City Sch. Dist., 238 F.3d 755, 765 (6th Cir. 2001). *See also*, Roland M. v. Concord Sch. Committee, 910 F.2d 983, 994 (1st Cir. 1990); Burke County Bd. of Educ. v. Denton, 895 F.2d 973, 982 (4th Cir. 1990); Heather S. by Kathy S. v. Wisconsin, 937 F. Supp. 824, 831-832 (E.D. Wisc. 1996) (*aff'd* 125 F.3d 1045 (7th Cir. 1997)).

The IEP "must respond to all significant facets of the student's disability, both academic and behavioral." Alex R. v. Forrestville Valley, 375 F.3d at 613 (citation omitted). But "a free appropriate public education is not necessarily the

9

best possible education nor is it one that maximizes the potential of each child with disabilities." Heather S. by Kathy S. v. Wisconsin, 937 F. Supp. at 830 (citing Hendrick Hudson Dist. Bd. of Educ. v. Rowley, 458 U.S. at 191-203).

### DECISION

To succeed on their IDEA claim, the Bayers must persuade the court by a preponderance of the evidence that the defendants denied Billy an appropriate education. Alex R. v. Forrestville Valley, 375 F.3d at 611. The Bayers cannot meet this burden because their brief contains no citation to the 3802 page administrative record. Their *pro se* status entitles them to some leniency, especially when it comes to technical, procedural matters, but no plaintiffs, *pro se* or otherwise, are entitled to judgment on a claim for which they have directed the court to no relevant, credible evidence. *See* Hrobowski v. Worthington Steel Co., 358 F.3d 473, 478 (7th Cir. 2004) (describing essential nature of pointing district court to evidence supporting one's claim).

The citations the Bayers do include in their brief are largely undecipherable by the court. They don't refer to the administrative record, but rather attempt to point the court to supplementary evidence the plaintiffs have submitted in four large three-ring binders, or to other sources the court simply cannot identify. The court has endeavored to locate the documents to which the Bayers cite, and has indeed located many of them during hours spent sifting through the contents of the submitted three-ring binders. What the court has found are copies of

10

magazine and journal articles discussing various disabilities, examples of Billy's homework assignments, Billy's report cards, copies of federal and state laws and regulations. None of this evidence persuades the court that the hearing officer and the Board of Special Education Appeals erred in concluding that the defendants provided Billy with an appropriate education. The court declines to address the issues raised by the Bayers that are supported by nothing more than conclusory allegations and/or less-than-relevant citations to their supplemental exhibits.

      The Bayers do highlight that the defendants appear to have committed two procedural violations in developing Billy's IEP. First, the school refused to hold a case conference committee for about three months when Mrs. Bayer requested one in the fall of 2002; the IDEA requires schools to convene a case conference committee upon a parent's request. Second, the Bayers note that the paperwork commemorating one case conference committee didn't indicate whether extended year services were considered, another technical violation of IDEA requirements. In any event, the record reflects that the case conference committee considered the ESY services. These errors were noted in the administrative decisions as well. The Bayers haven't made the required showing that these procedural violations adversely affected the development of Billy's IEP or caused "substantive harm" to Billy or his parents. Knable ex rel. Knable v. Bexley City Sch. Dist., 238 F.3d 755, 765 (6th Cir. 2001); Heather S. by Kathy S. v. Wisconsin, 937 F. Supp. 824, 831-832 (E.D. Wisc. 1996) (*aff'd* 125 F.3d 1045 (7th Cir. 1997)).

CONCLUSION

Based on the evidenced presented by the parties, and located by the court's searching review of the Bayers' supplemental exhibits, the court cannot conclude that the hearing officer and the Board of Special Education Appeals erred in finding that the defendants provided Billy with a free, appropriate, public education. This is particularly true in light of the due deference to which the administrative findings are entitled. Accordingly, the defendants' motion for summary judgment on the Bayers' IDEA claim [docket no. 58] is GRANTED.

The defendants have not moved for summary judgment as to the other claims contained in the Bayers' second amended complaint. The defendants mention these claims for the first time in their reply brief. The court cannot rule on a motion that has not been filed, so the Bayers' non-IDEA claims continue to pend.

The Bayers moved for a hearing "on any and all previous Motions and/or Petitions filed by Defendants thus far [as of May 4, 2005]." Many of those previous motions had already been decided at the time the plaintiffs asked for a hearing, and the briefs submitted on the summary judgment motion lead the court to believe a hearing would not be helpful in resolving this matter. The Bayers' motion for a hearing [docket no. 78] is DENIED.

SO ORDERED.

ENTERED: August 16, 2005

                                             /s/ Robert L. Miller, Jr.  
                                            Chief Judge  
                                            United States District Court

cc:   M. Bayer  
       M. Conrad